1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8
9

Daniel Walker Malmo,

No. CV-14-02396-PHX-DGC (JZB)

10

Petitioner,

**REPORT AND RECOMMENDATION**

11

v.

12

Charles L. Ryan, et al.,

13

Respondents.

14
15

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

16

Petitioner Daniel Walker Malmo has filed a *pro se* Petition for Writ of Habeas

17

Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1.)

18

**I.    SUMMARY OF CONCLUSION**

19

On May 2, 2008, Petitioner pleaded guilty to Aggravated Assault (CR2007–

20

008330) and to Armed Robbery and Assisting a Criminal Street Gang (CR2007–139969).

21

On July 29, 2008, Petitioner was sentenced to concurrent terms of 15, 15, and 21 years

22

imprisonment. Grounds 1-5 and 7-20 are unexhausted and procedurally defaulted.

23

Petitioner has not established cause to excuse the procedural default due to ineffective

24

assistance of counsel.   Further, Grounds 5, 15-17, and 20 are not cognizable, and

25

Grounds 18-19 are waived.  Finally, Ground 6 fails on the merits.  Therefore, the Court

26

will recommend that the Petition be denied and dismissed with prejudice.

27
28

## II.   BACKGROUND

### a.  Facts of the Crimes

The Presentence Report includes a summary of the underlying facts of Petitioner's crimes in CR2007–008330:[1]

> On June 22, 2001, Department of Corrections Criminal Investigations Unit Police Officers R. Watson and L. Douchel attempted to arrest Daniel Malmo for a parole warrant. Mr. Malmo fled on foot and entered his vehicle. In an attempt prevent the defendant from leaving, Officer Watson drove his vehicle, with Officer Douchel as his passenger, behind the defendant's vehicle, Subsequently, Mr. Malmo placed his vehicle in reverse and "rammed" the front passenger side of the other vehicle. At one point, the passenger sides of both vehicles were pressed together, endangering Officer Douchel. The defendant exited his vehicle and fled the scene in another vehicle.

(Doc. 13-1, Ex. S, at 70.) The Presentence Report also includes a summary of the underlying facts of Petitioner's crimes in CR2007–139969:

> On June 15, 2007, Jesse Marquez contacted police and reported that New Mexican Mafia gang members were trying to kill him. He indicated that due to his brother's associations, he had become close to several high-ranking members of the gang for more than a six-month period. Mr. Marquez had been directed to engage in fraudulent schemes for the organization. After police arrested a high-ranking member for whom Mr. Marquez had worked, Mr. Marquez was introduced to the defendant, for whom he was told he now worked. Although Mr. Marquez was not a member of the gang and had never been to prison, he was "kept around" because of his abilities to engage in fraudulent scenes. Later, Mr. Marquez provided police with detailed information that he had either been present at or had destroyed evidence in eight homicides perpetrated by the organization.
>
> Mr. Marquez reported that on June 14, 2007, the defendant had come to Mr. Marquez's residence with Jose Ortega and Antonia Terrazas. Mr. Marquez directed two females, who were already inside the residence, to wait outside the residence. The defendant, who possessed a weapon in his waistband, used the bathroom to "suit-up" in all black clothing. Mr. Marquez was alarmed because this was customary for New Mexican Mafia members to do before committing a homicide. When Mr. Malmo told Mr. Marquez to come to him, Mr. Marquez expressed a need to check on the females. Subsequently, Mr. Ortega pointed a handgun at

---

[1]   Presentence reports are an appropriate source for the facts underlying a defendant's convictions. *See State v. Rose*, 297 P.3d 906, 912 (2013).

the victim, whose path to the door the defendant then blocked. At this point, Mr. Malmo directed Ms. Terrazas to take the victim's computer equipment. The defendant told Mr. Marquez that the "Lieutenant," who was a high ranking member of the organization, wanted Mr. Marquez "smoked" (dead). The defendant then told Mr. Marquez that he had "nice kids," which the victim took as a threat. Before Mr. Malmo left with Mr. Ortega and Ms. Terrazas, the defendant took money that had been on top of a television. After a sleepless night, in which the victim spent peering from his front window, Mr. Marquez decided to contact police.

On June 20, 2008, police arrested Mr. Malmo. He admitted that during the present offenses, he had possessed a firearm for personal protection but denied handling it at that time. The defendant also denied knowing why Mr. Ortega had pointed a handgun at the victim. Mr. Malmo indicated he did not take the victim's money and that the computer equipment had belonged to the defendant. Mr. Malmo acknowledged that he had the "keys to the streets," as he was the New Mexican Mafia's highest-ranking member who was not imprisoned, and that he had told Mr. Marquez that a "hit" had been put on him and his brother.

(Doc. 13-1, Ex. S, at 71-73.)

**b. Charges, Convictions, and Sentencing of Petitioner**

On June 28, 2007, the State charged Petitioner in CR2007–139969 with armed robbery, first-degree burglary, conspiracy to commit armed robbery, assisting a criminal street gang, and misconduct involving weapons. (Doc. 13-1, Ex. A, at 2.) The State also alleged Petitioner had three prior felony convictions (Doc. 13-1, Ex. B, at 9) and committed the offense in furtherance of a criminal street gang (Doc. 13-1, Ex. C, at 12). The state further alleged Petitioner would be required to serve a life sentence. (Doc. 13-1, Ex. J, at 35); *see* A.R.S. § 13–706(A) (mandating life sentence upon conviction of three "serious offense[s]" not committed on the same occasion).

On September 20, 2007, the State charged Petitioner in CR2007–008330 with one count of aggravated assault against a peace officer. (Doc. 13-1, Ex. F, at 24.)

On May 2, 2008, Petitioner entered into plea agreements in both cases. Petitioner pleaded guilty to one count of Aggravated Assault (CR 2007-008330) and Armed Robbery and Assisting a Criminal Street Gang (CR 2007-139969). (Docs. 13-1, Exs. O-P, at 56-62.) On July 29, 2008, Petitioner was sentenced to concurrent terms of 15 years imprisonment (Aggravated Assault), 21 years imprisonment (Armed Robbery), and 15

years imprisonment (Assisting a Criminal Street Gang). (Doc. 13-2, Exs. U-V, at 2-10.)

### c.  Change of Counsel Motions

On February 25, 2008, Petitioner filed a motion to change counsel, or in the alternative, to represent himself. (Doc. 13-1, Ex. K. at 38.)  On March 3, 2008, the trial court addressed Petitioner's motion.  (Doc. 13-5, Ex. TT, at 37.)  Petitioner stated he was concerned about counsel's ability to adequately represent him at trial in the event he did not enter a plea agreement. Petitioner told the judge that "a plea agreement will be possible, but in the event it is not, I need to be confident in the attorney that's defending me."  (Doc. 13-5, Ex. TT, at 37.)  Petitioner believed his counsel was "a good attorney" but he was concerned she was too busy to give his "case the attention" he believed it deserved.  (*Id.*)  He reiterated that "again, I do believe a plea agreement can be reached. . . ." (*Id.*)  The court stated that "[y]ou are entitled to have competent representation, and Miss Hindmarch is very competent counsel. I don't see a -- I understand you may have disagreements as to decisions she may make in your representation but that doesn't necessarily mean that that entitles you to new counsel."  (*Id*. at 38.)  The court denied the motion for new counsel, and did not expressly rule on the motion for self-representation. (*Id.*)

On April 3, 2008, Petitioner filed a petition for special action in the Arizona Court of Appeals, challenging the trial court's denial of his motion to change counsel or represent himself.  (Doc. 13-3, Ex. BB, at 2.) On April 7, 2008, the court of appeals declined to accept jurisdiction of the special action.  (Doc. 13-3, Ex. CC, at 15.)  On April 30, 2008, Petitioner's request for review was filed the Arizona Supreme Court.  (Doc. 13-3, Ex. DD, at 19.) Meanwhile, on April 17, 2008, Petitioner also filed a motion in trial court requesting the trial judge reconsider the denial of his request for new counsel. (Doc. 13-1, Ex. M, at 50.) On April 23, 2008, the court addressed Petitioner's motion and asked Petitioner if he wanted the motion addressed.  (Doc. 13-5, Ex. UU, at 46.)  Petitioner stated "I'll withdraw at this time." (*Id.*) The court stated "[t]hat motion will be withdrawn." (*Id.*)  On May 2, 2008, while his petition for review was pending in the Arizona Supreme Court, Petitioner pleaded guilty in both cases.  (Docs. 13-1, Exs. O-P,

at 56-62.)

**d.   Petitioner's First Post-Conviction Relief Proceeding**

On October 21, 2008, Petitioner filed a *pro se* PCR Notice. (Doc. 13-2, Ex. W, at 12.) On March 17, 2010, Petitioner, through counsel, filed a petition for post-conviction relief.  (Doc. 13-2, Ex. Y, at 20.)  Petitioner raised four grounds:

1. the "trial court committed reversible error when it denied Mr. Malmo's motion to change counsel without addressing his alternative request to be permitted to represent himself" (Doc. 13-2, Ex. Y, at 25);

2. "it was error for the trial court to deny Mr. Malmo's motion to change counsel without affording him" a hearing (*Id.* at 28);

3. Petitioner was prejudiced by ineffective assistance of counsel when counsel failed to investigate defenses (*Id.* at 31-32);

4. Petitioner was prejudiced by the use of improper aggravating factors at sentencing (*Id.* at 34-36).

On November 12, 2010, the court denied the petition.  (Doc. 13-2, Ex. AA, at 64-66.)  On December 27, 2010, Petitioner filed a petition for review in the Arizona Court of Appeals.  (Doc. 13-3, Ex. GG, at 47.)  On May 15, 2013, the court of appeals summarily denied review. (Doc. 13-4, Ex. MM, at 37.)

On November 13, 2013, the Arizona Supreme Court denied Petitioner's petition for review. (Doc. 13-4, Ex. NN, at 55.)

**e.   Petitioner's Second Post-Conviction Relief Proceeding**

While Petitioner's petition for review was pending in the Arizona Supreme Court, he filed a second PCR notice in the trial court asserting that his trial lawyer made a "significant omission" and that his PCR lawyer's "failure to raise issues constituted deficient performance." (Doc. 13-4, Ex. PP, at 59.) The trial court dismissed the notice as untimely and successive. (Doc. 13-4, Ex. QQ, at 61.)

**f.   Petitioner's Federal Habeas Petition**

On October 28, 2014, Petitioner filed this habeas Petition. (Doc. 1.) On February 26, 2015, Respondents filed a Limited Answer to the Petition.  (Doc. 13.)  On May 26, 2015, Petitioner filed a Reply. (Doc. 16.) Petitioner raises the following grounds for

relief:

1. Failure to obtain victim's prior convictions and pending criminal charges;

2. Failure to provide recordings or transcripts of police interviews with Petitioner and others in armed robbery case;

3. Waiving time without consent in violation of right to speedy trial;

4. Failure to advise that plea agreement had parole allegation and that uncharged murder case would be considered by the court at sentencing;

5. Failure to provide presentence report;

6. Failure to obtain cellular phone records;

7. Failure to interview potential police witness to aggravated assault;

8. Failure to investigate scene of aggravated assault;

9. Failure to interview armed robbery victim and others;

10. Failure to investigate Petitioner's gang status;

11. Failure to interview officer who witnessed the aggravated assault;

12. Failure to hire expert regarding aggravated assault;

13. Failure to hire private investigator;

14. Failure to investigate Petitioner's intoxication during police interview;

15. Failure to object to aggravating factors at sentencing;

16. Failure to object to dangerous allegation at sentencing;

17. Failure to object to gang allegation at sentencing;

18. Error of court to fail to change counsel;

19. Error of court to deny right to self-representation; and

20. Error of court to consider uncharged murder case as aggravating factor.

(Doc. 1.)[2]

---

[2] The Court notes that pages 23 and 24 of the Petition should be switched.

## III.     APPLICATION OF LAW

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244.

### a.  The Petition is Timely.

The AEDPA imposes a one-year limitation period, which begins to run "from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."   28 U.S.C. § 2244(d)(1)(A).  Petitioner's PCR proceedings were dismissed on September 4, 2013, and Petitioner filed the instant Amended Petition on December 3, 2013. The Petition is timely.

### b.  Grounds 1-5 and 7-20 are procedurally barred.

#### i.  Law

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31–32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of

- 7 -

satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53, 59 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731–32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260 (1989).

A procedurally defaulted claim may not be barred from federal review, however,

"if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 732. *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook v. Schriro*, 538 F.3d 1000, 1028 n.13 (9th Cir. 2008).

Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

### ii.  Application

#### 1.  Grounds 1-5 and 7-15

Grounds 1-5 and 7-15 are unexhausted and procedurally defaulted because Petitioner did not raise them in the trial court and at the Arizona Court of Appeals. Ground 12 (failure to retain expert) was the only one of these grounds raised in the trial court, but Petitioner did not raise Ground 12 in the Arizona Court of Appeals.  Petitioner did not 'fairly present' these claims in each appropriate state court. *See Casey v. Moore*, 386 F.3d 896, 915–19 (9th Cir. 2004) (finding petitioner failed to fairly present federal claims when he raised them "for the first and only time to the state's highest court on discretionary review"). The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either in a direct appeal or in a petition for post-conviction relief.  *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

The failure to fairly present these grounds has resulted in procedural default because Petitioner is now barred from returning to state courts.  *See* Ariz. R. Crim. P. 32.2(a), 32.4(a). *See also Coleman*, 501 U.S. at 735 n. 1 (1991) ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default for purposes of federal habeas.").

Petitioner offers no grounds to excuse the procedural default by a showing of cause and prejudice. Instead, Petitioner erroneously asserts he raised them in trial court. Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal

quotations omitted).   Petitioner incorrectly asserts he presented these arguments in the state courts.

### 2.  Grounds 16-20

Grounds 16-20 are unexhausted because Petitioner presented these claims in state court only on state grounds. (Doc. 13-2, Ex. Y, at 21-33.) In Grounds 16 and 17, Petitioner challenges the use of a deadly weapon and gang membership as both elements of the offense and aggravating factors. (Doc. 1 at 26-28.) In his PCR Petition, these were never raised as violations of federal law.  As such, the claims are unexhausted, and would now be precluded. Ariz. R. Crim. P. 32.2(a)(3). Therefore, Petitioner's claims are procedurally defaulted.

Grounds 18 (change of counsel), 19 (self-representation), and 20 (use of murder case at sentencing) were not raised as federal constitutional claims in state court. Ground 18 was raised in Petitioner's PCR as a failure to hold a hearing to change counsel. Assuming this is the same argument, it was not raised as a federal claim in his PCR. Ground 19 was not raised as a federal claim in the Arizona Court of Appeals. Ground 20 was raised as a violation of state law in both state courts.  These claims are unexhausted and procedurally defaulted.

### 3.  Ground 6

Petitioner raised Ground 6 in his state proceedings and Ground 6 is reviewed below on the merits.

### iii.  *Martinez v. Ryan*

Petitioner asserts, at the end of his Reply, that his claims "should not be dismissed with prejudice" as "the recent *Martinez* ruling set new precedent that post-conviction counsel IAC claims should not in fact be time-barred as the state asserts." (Doc. 16 at 22.)  Pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012)*,* a petitioner may establish cause for the procedural default of an ineffective assistance claim "by demonstrating two things: (1) 'counsel in the initial review collateral proceeding, where

the claim should have been raised, was ineffective under the standards of *Strickland*[3] . . .'
and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one,
which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook
v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 132 S.Ct. at 1318). *See
also Detrich v. Ryan*, 740 F.3d 1237, 1248 (9th Cir. 2013) ("We therefore read *Martinez*
to allow new claims of trial-counsel IAC, asserted for the first time on federal habeas . .
.").

Claims of ineffective assistance of counsel are governed by the principles set forth
in *Strickland*, 466 U.S. at 674. To prevail under *Strickland*, a petitioner must show that
(1) counsel's representation fell below an objective standard of reasonableness, and that
(2) the deficiency prejudiced the defense. *Id*. at 687–88. The inquiry under *Strickland* is
highly deferential, and "every effort [must] be made to eliminate the distorting effects of
hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to
evaluate the conduct from counsel's perspective at the time." *Id*. at 689. With respect to
*Strickland*'s second prong, a petitioner must affirmatively prove prejudice by "show[ing]
that there is a reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different. A reasonable probability is a
probability sufficient to undermine confidence in the outcome." *Id*. at 694. The
*Strickland* test applies to a federal habeas petitioner's challenge to a conviction entered
upon a guilty plea. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985); *Washington v.
Lampert*, 422 F.3d 864, 872 (9th Cir. 2005). In such a context, "the ineffectiveness
inquiry probes whether the alleged ineffective assistance impinged on the [petitioner's]
ability to enter an intelligent, knowing and voluntary plea of guilty." *Lampert*, 393 F.3d
at 980.

In *Hill*, the Supreme Court adapted the two-part
*Strickland* standard to challenges to guilty pleas based on
ineffective assistance of counsel, holding that a defendant
seeking to challenge the validity of his guilty plea on the
ground of ineffective assistance of counsel must show that (1)

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

his "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for [his] counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 57-59, 106 S.Ct. 366.

*Womack v. Del Papa*, 497 F.3d 998, 1002 (9th Cir. 2007).

Petitioner does not assert that post-conviction counsel was ineffective. Petitioner asserts that "[i]f this petitioner were to contest post-conviction counsel was ineffective . . ." then *Martinez* would apply. (Doc. 16 at 22.) But Petitioner does not present argument that his PCR counsel was ineffective. This would be sufficient for the Court to conclude that Petitioner has not established grounds to excuse the procedural default of Grounds 1-5 and 7-20.

Nonetheless, below, the Court addresses whether Petitioner established cause for the procedural default due to ineffective assistance of trial counsel. *See Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("Pro se habeas petitioners are to be afforded the benefit of any doubt . . ."); *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir. 2005) (a federal court may deny an unexhausted petition on the merits when it is "perfectly clear" that the petitioner does not raise a colorable federal claim).

## 1. *Martinez* Review of Grounds 1-4 and 6-14

Petitioner's arguments in Grounds 1-4 and 6-14 concern trial counsel's conduct prior to Petitioner's plea of guilty. Petitioner challenges his guilty plea by alleging that it resulted from the deprivation of effective assistance of counsel. Petitioner contends that defense counsel was constitutionally ineffective for failing to provide information regarding the victims, witnesses, records, transcripts, the scene, the plea agreement, Petitioner's gang status, and Petitioner's intoxication during his post-arrest interview.

Petitioner fails to establish there is a reasonable probability that he would have insisted on proceeding to trial if he had additional information. Petitioner and his counsel negotiated two plea agreements that had ranges of 10 to 21 years of imprisonment. The plea agreements mandated that all sentences run concurrently. Petitioner's plea agreements dismissed an allegation that would have required a lifetime term of imprisonment. His agreements dismissed the allegation of prior felony convictions and a

statutory enhancement that his crimes were in furtherance of gang activity.  The state also agreed not to file charges in an unrelated murder case. Petitioner, through counsel, requested a total sentence of 10.5 years imprisonment. (Doc. 13-5, Ex. WW, at 81.) The record demonstrates that Petitioner negotiated favorable agreements in light of the facts of his cases.  Moreover, Petitioner would have had to prevail in both of his cases to achieve a result better than his plea offer.  Petitioner faced up to 28 years imprisonment for the most serious charges in each case. (Doc. 13-5, Ex. SS, at 7.)

Ultimately, Petitioner received double the sentence he hoped for, and now asserts that it was due to his counsel's performance prior to his plea. Although Petitioner would have preferred more information, Petitioner had sufficient information of his cases "to enter an intelligent, knowing and voluntary plea of guilty." *Lambert*, 393 F.3d at 980. At the settlement conference for these two cases, Petitioner was present when the prosecutor outlined the strong evidence arrayed against the Petitioner.  Regarding the Aggravated Assault, the parties agreed Petitioner attempted to flee the scene, although Petitioner denied he had intent to place officers in reasonable apprehension of fear of injury. (Doc. 13-5, Ex. SS, at 16-18.) Petitioner had pictures from the scene of the Aggravated Assault. He told the settlement conference judge that "if the pictures and the police reports are looked at a little bit more closely the skids marks are from the police vehicle – my vehicle was the one that was damaged on the side." (Doc. 13-5, Ex. SS, at 15.) Petitioner had sufficient information to determine his likelihood of success at trial on the issue of his intent. Petitioner also knew whether he had the intent to commit this crime, and he told the court at the change of plea hearing that he intended to commit the offense. Petitioner's representations at the plea hearing, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Solemn declarations in open court carry a strong presumption of verity." *Id.*; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012) ("Petitioner's statements at the plea colloquy carry a strong presumption of truth.").

Similarly, in the Armed Robbery/Assisting a Criminal Gang case, Petitioner had

sufficient information regarding that case. Petitioner was aware of the government's case, which was described during the settlement conference. After his arrest, Petitioner told police that he went to the victim's residence, he was with others, his group brought a firearm that was used during the incident, and that the victim's property was taken. (Doc. 13-5, Ex. SS, at 19-21.)  Petitioner reviewed reports regarding the Armed Robbery.  He told the court that "the victim didn't call the police until the following day" and told the Court he did not want to discuss his trial strategy. (*Id*. at 21.) The conduct of Petitioner's counsel did not impinge upon Petitioner's ability to knowingly, intelligently, and voluntarily plead guilty.

### 2. *Martinez* Review of Grounds 5, 15-17, and 20

Petitioner's arguments in Grounds 5, 15-17, and 20 concern trial counsel's conduct prior to sentencing. These claims are not cognizable in federal habeas review because the Supreme Court of the United States has not clearly established a right to effective assistance of counsel at a non-capital sentencing. *See Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (habeas relief unavailable for claims of ineffective assistance of counsel at sentencing in non-capital cases); *Cooper–Smith v. Palmateer*, 397 F.3d 1236, 1244–45 (9th Cir. 2005) (because no Supreme Court precedent applies to ineffective assistance of counsel in ordinary sentencing hearings, state court's denial of this claim was not contrary to or an unreasonable application of clearly established Federal law).

Petitioner's claims are also insufficient. Petitioner alleges trial counsel was ineffective for failing to provide a presentence report (Ground 5), failing to object to aggravating factors (Grounds 15-17), and failing to object to the court's consideration of the uncharged murder facts (Ground 20).  Petitioner fails to demonstrate counsel was ineffective.

In Ground 5,[4] Petitioner asserts counsel failed to provide him a presentence report so that Petitioner could "go over the report to point out any defects therein." (Doc. 1 at

---

[4] Petitioner asserts additional issues in Ground 5 that are reasserted in Grounds 15-17. The Court reviews these additional issues under the subsequent Grounds.

12.) Petitioner asserts that this allowed the court to consider the victim's impact statement "when no victim impact report was done nor the victim's testimony given to the impact of the crime." (*Id*.) The court was required to consider the victim's statement at sentencing, so counsel was not ineffective for failing to object to the victim's statement.   In Grounds 15 (use of a fourth prior felony conviction, parole status, vehicle as aggravating factor), 16 (vehicle as aggravating factor), and 17 (gang status as aggravating factor), Petitioner alleges trial counsel should have objected to the court's use of these facts. (Doc. 1 at 25-28.) Counsel was not deficient when the trial court considered Petitioner's four prior convictions and parole status. The plea agreement stated only that the plea was "not binding on the State" until the State confirmed Petitioner's avowal "that he has no more than 3 felony convictions" or was "on parole/community supervision at the time of this offense." (Doc. 13-1, Ex. O-P, at 57, 61.)  This provision allowed the State to withdraw from the plea agreement, it did not preclude the trial court from considering Petitioner's criminal history and parole status. The State did not allege Petitioner's prior felony convictions to increase the statutory sentencing ranges for his offenses and the plea agreement does not stipulate that the trial court was precluded from considering Petitioner's criminal history. The State dismissed the allegation that Petitioner's offenses were committed in furtherance of gang activity, which would have increased Petitioner's sentencing range by three years. *See* A.R.S. § 13–604(T). The plea agreement does not preclude the trial court from considering Petitioner's gang status.

The trial court found as additional aggravating factors, among others, that Petitioner was "on parole at the time of the offense" and that he was "an admitted member of a street gang." (Doc. 13-5, Ex. WW, at 83-84.) The court was permitted to consider his parole status. *See* A.R.S. § 13-701 (d) (24) (allowing the court to consider "[a]ny other factor that the state alleges is relevant to the defendant's character or background or to the nature or circumstance of the crime"). Petitioner was convicted of assisting a criminal street gang, an offense that did not require membership in a gang. During his guilty plea, Petitioner avowed only that he assisted the New Mexican Mafia,

not that he was a member of the gang. (Doc. 13-5, Ex. VV, at 59.) The court did not err in considering that Petitioner was also in gang, a fact that was not admitted by Petitioner as an element of the gang-assistance offense.

The court also found Petitioner used his car as a dangerous weapon. (*Id.* at 84.) Even if this was error,[5] the court finds it was harmless.  Here, in all three counts, the court found numerous aggravating factors and no mitigating factors.[6]  Petitioner was sentenced to 15 years imprisonment in the Aggravated Assault case, and 21 years imprisonment in the Armed Robbery case. There is no indication the court would have given a lesser sentence for this offense had it not improperly considered a single aggravating factor, thus there is no prejudice and resentencing is unnecessary. *See State v. Olmstead*, 145 P.3d 631, 633 (Ariz. Ct. App. 2006) (declining to find error because "the court considered the individual circumstances of the defendant and . . . imposed a sentence well within its discretion"); *State v. Ruggiero*, 120 P.3d 690, 695–96 (Ariz. Ct. App. 2005) (concluding that defendant did not carry burden to show prejudice where the court improperly considered aggravating factor).

Regarding Ground 20 (consideration at sentencing of murder incident), the trial court was permitted to consider facts of Defendant's character.   *See* A.R.S. § 13-701 (d) (24). Trial counsel "took issue with the State asking the Court to consider arrests that Mr. Malmo may have been involved with." (Doc. 13-5, Ex. WW, at 80.) Counsel told the court it was inappropriate for the court to consider "something the State is summarizing in terms of what they want to consider as aggravation." (*Id.*) Thus, trial counsel was not

---

[5] *See* A.R.S. § 13–701(D)(2) (Supp. 2013) (stating that a court can consider use of a dangerous instrument as an aggravating factor "except if this circumstance is an essential element of the offense . . . or has been utilized to enhance the range of punishment under [A.R.S.] § 13–704 [ (Supp. 2013) ]").

[6] The court found the following aggravating factors for the Aggravated Assault: "previous felony convictions" and the "assault on a police officer with a car was essentially a dangerous weapon, multiple victims who feared for their life." (*Id.* at 84.) The court found the following aggravating factors for the Armed Robbery: "there were accomplices involved, the trauma to the victim involved, the fact that there are four previous felony convictions, you were on parole at the time of the offense, the offenses were for pecuniary gain and that you are an admitted member of a street gang." (*Id.* at 83.)

ineffective regarding this information.  Moreover, the court found numerous aggravating factors at sentencing, and the uncharged conduct was not listed by the court as one of them.

### 3.  *Martinez* Review of Grounds 18-19

Petitioner's arguments in Grounds 18 (denial of change of counsel) and 19 (failure to rule on request for self-representation) were waived upon entry of Petitioner's guilty plea after Petitioner withdrew his motion on this issue. Because the arguments were waived, post-conviction counsel was not ineffective for failing to argue them. Generally, it "is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez–Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  Petitioner's claim regarding change of counsel (Ground 18) is waived. *See United States v. Foreman*, 329 F.3d 1037, 1038–39 (9th Cir. 2003) (precluding pre-plea motion for substitute counsel claim), overruled on other grounds by *United States v. Jacobo Castillo*, 496 F.3d 947, 949 (9th Cir. 2007) (en banc); *United States v. Somoza*, 458 F. App'x 592, 593 (9th Cir.  2011) ("By pleading guilty, Somoza waived his claim that the district court erred in denying his motion to substitute counsel.").

The Court reviews Petitioner's claim regarding self-representation. *See United States v. Hernandez*, 203 F.3d 614, 626–27 (9th Cir. 2000) (finding denial of request for self-representation reviewable despite guilty plea). Here, the trial court did not expressly deny Petitioner's request for self-representation. The court ruled that "[a]t this point in time I am going to deny the motion for change of counsel." (Doc. 13-5, Ex. TT, at 28.)

On April 17, 2008, Petitioner filed a subsequent motion for reconsideration of his motion for change of counsel and self-representation. (Doc. 13-5, Ex. M, at 50.) On April 23, 2008, the court addressed Petitioner's motion and asked Petitioner if wanted the motion addressed.  (Doc. 13-5, Ex. UU, at 46.) Petitioner stated "I'll withdraw at this time." (*Id.*) The court stated "[t]hat motion will be withdrawn." (*Id.*) On May 2, 2008, Petitioner pleaded guilty in both cases.   Because Petitioner withdrew his motion for self-representation, he cannot complain that counsel was ineffective. If post-conviction counsel had raised these claims, they would have been rejected. "[T]he failure to take a futile action can never be deficient performance." *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

Petitioner does not demonstrate that trial counsel was ineffective. Because the underlying ineffective assistance claims are without merit, Petitioner's PCR counsel was not ineffective for failing to raise them. *See Martinez*, 132 S.Ct. at 1319. And, thus, Petitioner cannot show his claims are "substantial" in order to satisfy his burden under *Martinez*. Petitioner, therefore, has failed to present reasons to excuse his procedural defaults. The Court will recommend that Grounds 1-5 and 7-20 be denied and dismissed.

### c.  Grounds 5, 15-17, and 20 are not cognizable.

Petitioner's arguments in Grounds 5, 15-17, and 20 regarding sentencing are not cognizable in federal habeas review because the Supreme Court of the United States has not clearly established a right to effective assistance of counsel at a non-capital sentencing. *See Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (habeas relief unavailable for claims of ineffective assistance of counsel at sentencing in non-capital cases); *Cooper–Smith v. Palmateer*, 397 F.3d 1236, 1244–45 (9th Cir. 2005) (because no Supreme Court precedent applies to ineffective assistance of counsel in ordinary sentencing hearings, state court's denial of this claim was not contrary to or an unreasonable application of clearly established Federal law). This Court concludes that § 2254(d)(1) bars habeas relief because there is no clearly established law from the U.S. Supreme Court on point.

Assuming, *arguendo*, that these claims were reviewable, the state court's adjudication of Petitioner's claims was not an unreasonable application of the *Strickland* standard. *See Daire v. Lattimore*, 780 F.3d 1215, 1221–22 (9th Cir. 2015) (finding *Davis* and *Cooper–Smith* binding and also finding state court's determination was not unreasonable). Here, the trial court found:

> The affidavit submitted by the Petitioner does not contain specific information as to how counsel failed to inform Petitioner of the merits of the case. Other than Petitioner's claim that his counsel failed to provide him access to information, there is no indication how counsel failed to advise him on the merits of the taking the plea versus going to trial. Without more than the Petitioner's assertion, the Court is being asked to speculate that counsel failed to inform Petitioner of the merits of the plea and/or trial and that there was a reasonable probability that the outcome would have been different (i.e. that Petitioner would have rejected the plea.) Furthermore, the transcript does not support Petitioner's position. The Petitioner had discussions with the prosecutor and the court about the charges against him and the strengths and weaknesses of the cases against him, including his defenses. (See transcript of proceedings February 29, 2008.) It is clear that Petitioner had has the information he now claims to be lacking.
>
> The Court finds Petitioner has failed to demonstrate by a preponderance of the evidence that his counsel fell below an objective standard of reasonableness or that he was in any way prejudiced. Accordingly, Petitioner's claim for ineffective assistance of counsel fails.
>
> As to the claims of error by the Court in sentencing, the Petitioner waived these claims by failing to object at the time of sentencing to the information contained in the presentence report as to Petitioner's prior felony convictions or parole status or the Court's reliance on the information or, alternatively, if there was any error, it was harmless and the outcome would not be any different.

(Doc. 13-2, Ex. AA, at 65.)  For the reasons outlined in section III.b.iii.2 above, the state court's rejection of these claims was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.

### d.  Grounds 18-19 were waived.

Although Grounds 18 and 19 are procedurally defaulted, they are also waived by Petitioner's guilty plea. *See Tollett*, 411 U.S. at 267; *United States v. Caperell*, 938 F.2d

975, 977 (9th Cir. 1991) (a guilty plea generally waives all claims of a constitutional nature occurring before the plea). For the reasons outlined in section III.b.iii.3 above, Grounds 18 and 19 are waived.

### e.  Ground 6 lacks merit.

#### i.  Standard of Review

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a).  Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. § 2244.

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S.Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009).  The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue."  *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions.  And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.  Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal citations and quotations omitted). *See also Arrendondo v. Neven*, 763 F.3d 1122, 1133-34 (9th Cir. 2014).

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fair minded disagreement." *Harrington v. Richter*, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." [] 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

*Burt v. Titlow*, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in United States Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005).

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. *See McNeal v. Adams*, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. *See, e.g., Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an incorrect one. *See Renico*, 130 S. Ct. at 1862; *Cooks v. Newland*, 395 F.3d 1077, 1080

(9th Cir. 2005).  "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case."  *Adamson v. Cathel*, 633 F.3d 248, 255–56 (3d Cir. 2011).  *See also Howard v. Clark*, 608 F.3d 563, 567–68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S.Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact."  *Sumner v. Mata*, 455 U.S. 591, 593 (1982).  *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  *See also Murray*, 745 F.3d at 998.  Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Burt*, 134 S.Ct. at 15 (internal quotation marks and citation omitted) (quoted by *Clark v. Arnold*, 769 F.3d 711, 724-25 (9th Cir. 2014)).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the AEDPA otherwise requires.  *See Lafler*, 132 S. Ct. 1389-90; *Panetti v. Quarterman*, 551 U.S. 930, 953–54 (2007). Additionally, the petitioner must show the error was not harmless: "For reasons of finality, comity, and federalism, habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (internal quotations

omitted).

### ii.  Petitioner's claim in Ground 6 lacks merit.

Petitioner asserts that trial counsel was ineffective for failing to obtain "cell phone records for two his own phones and a cell phone belonging to a company his live-in girlfriend was employed by." (Doc. 1 at 14.) Petitioner asserts that the victim had the girlfriend's company phone "for the sole purpose of concluding the property transaction the alleged victim would later claim he was robbed of." (*Id*.)  Petitioner asserts that the victim was not in fear for his life and "that things were fine between them." (*Id*.) Thus, Petitioner asserts the phone records would show the Petitioner and victim had an amiable relationship and also made "arrangements" for "future transactions." (*Id*.)  In his Petition for Post-Conviction Relief, Petitioner asserted counsel was ineffective because he "wanted counsel to subpoena the cell phone records to show that the victim had phoned him repeatedly even after the alleged robbery" but counsel failed to do so.  (Doc. 13-2, Ex. Y, at 32.) In his Petition for Review, Petitioner asserts he would not have pleaded guilty except for counsel's failure to investigate, including a failure to obtain "requested subpoenas of cell phone records." (Doc. 13-3, Ex. GG, at 59.)

The trial court found, as quoted above:

> The affidavit submitted by the Petitioner does not contain specific information as to how counsel failed to inform Petitioner of the merits of the case. Other than Petitioner's claim that his counsel failed to provide him access to information, there is no indication how counsel failed to advise him on the merits of the taking the plea versus going to trial. Without more than the Petitioner's assertion, the Court is being asked to speculate that counsel failed to inform Petitioner of the merits of the plea and/or trial and that there was a reasonable probability that the outcome would have been different (i.e. that Petitioner would have rejected the plea.) Furthermore, the transcript does not support Petitioner's position. The Petitioner had discussions with the prosecutor and the court about the charges against him and the strengths and weaknesses of the cases against him, including his defenses. (See transcript of proceedings February 29, 2008.) It is clear that Petitioner had has the

information he now claims to be lacking.[7]

> The Court finds Petitioner has failed to demonstrate by a preponderance of the evidence that his counsel fell below an objective standard of reasonableness or that he was in any way prejudiced. Accordingly, Petitioner's claim for ineffective assistance of counsel fails.

(Doc. 13-2, Ex. AA, at 65.)

Petitioner does not satisfy his burden of establishing "the state court acted contrary to *Strickland* or was unreasonable in concluding that Petitioner suffered *Strickland* prejudice, *i.e.* a reasonable likelihood that the result would have been different—at the guilt and/or penalty phase—but for the constitutionally deficient performance by counsel. *Walker v. Martel*, 709 F.3d 925, 940 (9th Cir. 2013).   Petitioner does not deny that he was present in the victim's residence and does not deny that Mr. Ortega threatened the victim with a firearm. Petitioner does not dispute property was taken from the victim. The issue in dispute was whether the property was stolen by force (*i.e.* the threat of a deadly weapon).  Phone records would not document whether the victim was robbed by Petitioner and others. At best, the records might corroborate that the victim and the Petitioner communicated before or after the event. Whether Petitioner can prevail on a claim of ineffective assistance of counsel for failure to investigate a potential defense depends in large part on whether the potential defense "likely would have succeeded at trial." *Hill*, 474 U.S. at 59; *see also Lambert*, 393 F.3d at 982 ("Where the alleged error is counsel's failure to investigate a potential defense, the salient inquiry is whether discovery of the evidence would have led counsel to change his recommendation as to the plea. In turn, the result of this inquiry may depend on whether the defense would have likely succeeded at trial.") (internal quotation marks, brackets, and citation omitted).

The value of the phone records, if they were available, would have been minimal and the records would not have changed the outcome of a trial. The state court's decision

---

[7] At the settlement conference, the prosecutor summarized the testimony of the Petitioner and the victim. "Defendant admits to having a gun and having agreement with the victim. The victim is going to say that everybody was yelling at him and pointing a gun at him and he had to kind of maneuver his way out of there. The victim is available." (Doc. 13-5, Ex. SS, at 20.) Petitioner agreed the evidence would show he was there, but he argues that "whatever property was taken from the house was paid for." (*Id.*)

was neither contrary to, nor an unreasonable application of *Strickland*. Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cf. Lambert*, 393 F.3d at 982 ("Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial.").

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's Grounds 1-5 and 7-20 are procedurally defaulted; Grounds 5, 15-17, and 20 are not cognizable; Grounds 18-19 are waived; and Ground 6 fails on the merits. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 8th day of January, 2016.

Honorable John Z. Boyle
United States Magistrate Judge